IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PHYLLIS WEINSTEIN

                                    Plaintiff.

                    v.                              Civil Action Number 3:04CV645

PVA I, LP, et al.

                                    Defendants.

## <u>MEMORANDUM OPINION</u>

THIS MATTER comes before the Court on Defendants PVA I, LP's d/b/a Sheraton Richmond West and the Procaccianti Group, LLC's (collectively "Defendants") Motion for Summary Judgment. For the reasons expressed below, Defendants' motion is GRANTED.

I.

This case is a premises liability action brought by Plaintiff Phyllis Weinstein, who was injured as she exited an automatic revolving door located in a hotel operated by Defendants. On June 6, 2003, Plaintiff checked in as a guest at the Sheraton Richmond West ("Sheraton") on Broad Street in Richmond. Pl. Dep. at 8. When Plaintiff first arrived at the Sheraton she entered through the tower portion of the hotel, where her room was located, after her daughter, Sandra Weinstein, checked in at the front desk. Pl. Dep. at 8, 14-15. The side entrance was a sliding door. Plaintiff did not use the automatic revolving door at issue, nor had she seen the lobby prior to the incident. Pl. Dep. at 8-9, 13.

The street entrance of the Sheraton consists of three separate doors. The automatic revolving door is located in the middle. On either side of the revolving door is a single door, one of which has a handicapped button which opens the door automatically. The revolving door has a beam emanating from the top front of it on both the entrance and exit sides which causes the door to start revolving when a person approaches it. The door will continue to revolve for a few seconds after the person has exited. James Kennedy Dep. at 14. The individual panels of the revolving door display signs which caution guests that it is an automatic door. The decal on the panels state:

AUTOMATIC
CAUTION
DOOR
Enter at right

The other decal on the door reads, "Automatic Door Push Only in Emergency."

There is also a button located inside the revolving door to slow it down. If the revolving door makes contact with a person while they are in it, the door will immediately come off track and stop. Kennedy Dep. at 21. If this situation occurs, the bellman would cut the power to the revolving door off completely to help the person inside (if needed), put the door back on track, and start it up again. Kennedy Dep. at 21, 25-29.

On June 7, 2003, Sandra Weinstein brought Plaintiff to the lobby to wait for her cousin. Pl. Dep. at 13-14. About ten to fifteen minutes later, Plaintiff approached the revolving door after she saw her cousin's car drive up outside. Pl. Dep. at 14, 22-24, 67. As Plaintiff approached the door, she did not see the door start to revolve, she did not know it was automatic, she did not notice the decals on the door, nor did she see the button to slow the door down. Pl. Dep. at 22-23. Plaintiff also did not see the two doors on either side of the revolving door. Pl. Dep. at 29. As Plaintiff went through the door, she fell after the door hit her from behind.

2

Plaintiff was in her mid-eighties at the time of the incident. At the time of her fall, Plaintiff had a cane with her which she only carried because it matched her outfit. Pl. Dep. at 7. Plaintiff had fallen fourteen years ago and broke her hip, had a pin placed in her hip, and had to walk with a walker for a time. Pl. Dep. at 7, 54-55. Plaintiff has never used an automatic revolving door or a handicap entrance before. Pl. Dep. at 9, 21.

James Kennedy has worked as a bellman at the location of the incident for twelve years.[1] Kennedy Dep. at 6. As bellman, he is responsible for standing inside the hotel by the revolving door to help guests with their luggage as they enter and exit the hotel. Kennedy Dep. at 10-11. When the incident occurred, Mr. Kennedy first saw Plaintiff sitting on the floor in the outside opening of the revolving door. Kennedy Dep. at 32-34. After Mr. Kennedy noticed that Plaintiff had fallen, he turned off the revolving door, exited the hotel through the side automatic door, and helped her back into the hotel. Kennedy Dep. at 34-37.

At the time of the incident, Creighton Smith was the General Manager at the Sheraton. Smith Dep. at 7. Smith contends that he has no record of any complaints about the revolving door from the date of its installation until June 3, 2003. However, prior to the incident Mr. Kennedy had seen the door hit people's luggage from behind and stop, hit people who had stopped, and hit people who were taking baby steps, instead of going at a normal pace. Kennedy Dep. at 57-59.

On September 9, 2004, Plaintiff, Phyllis Weinstein, filed a complaint against Defendants in federal court based on diversity jurisdiction. In her complaint, Plaintiff alleges that on June 7, 2003, Defendants negligently permitted the revolving door to operate at an excessively fast speed which

---

[1]The Sheraton bought the hotel facility from the Hyatt approximately four years ago. <u>See</u> Kennedy Dep. at 6.

caused her to fall and injure herself. Plaintiff asserts that through her expert witness, Mr. Charles Crim, she can prove that the speed of the revolving door was operating at an excessively fast speed at the time of Plaintiff's accident. Mr. Crim viewed video footage of the revolving door made at the Sheraton on June 25, 2003, and July 27, 2003. Based on the video, Mr. Crim picked a fixed point on the door frame, timed 1/3 revolution of the door with a stop watch, multiplied the 1/3 timed revolution times 3, and divided that result into 60 seconds per minute to get the revolutions per minute ("RPM"). Crim Dep. at 23. Mr. Crim determined that the door speed had an average of 6.5 RPM on July 25, 2003, and an average RPM of 6.4 on July 27, 2003. See Crim Dep. at 23-30, Exs. 8 & 13. Mr. Crim subsequently visited the Sheraton and determined that the speed of the door was an average of 6.52 RPM on January 19, 2004, and an average of 6.25 RPM on April 5, 2005. Crim Dep. at 57-61, Exs. 13-14.

II.

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993); Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. Ballinger v. North Carolina Agr. Extension Serv., 815 F.2d 1001, 1004 (4th Cir.), cert. denied, 484 U.S. 897 (1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). According to the Fourth Circuit,

4

> In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues.  Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e) . . . .  Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice.  A trial, after all, is not an entitlement.  It exists to resolve what reasonable minds would recognize as real factual disputes.

Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985) (emphasis in original).

See also Williams v. Cerberonics, Inc. 871 F.2d 452, 459 (4th Cir. 1989) ("[w]e have recognized that generalized testimony by an employee regarding his subjective belief that his discharge was the result of ... discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for his discharge").  Summary judgment is not appropriate if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

## III.

Summary judgment is appropriate in this matter because Plaintiff cannot prove the condition of the revolving door at the time of the incident. First, Mr. Crim never checked the speed setting of the revolving door. Crim Dep. at 47. Second, the earliest observations made by Mr. Crim were based on a videotape made approximately six weeks after the day of the accident. In that period of time, a number of variables could have changed or affected the speed of the door such as wear and tear, physical damage, or a leaf of the door coming off track. See Crim Dep. at 71-72.  Accordingly, there is no evidence in the record to indicate that the condition of the revolving door on the testing days were the same as it was on the day of the incident.

Moreover, the method in which Mr. Crim used to examine the speed of the revolving door is too speculative. A genuine issue of material fact will not be created where the expert testimony is founded on a sufficiently unreliable factual or scientific basis. See May v. Dover Elevator Co., 845 F. Supp. 377, 381 (E.D. Va. 1994). In the case at bar, Mr. Crim notes that: (1) the revolving door slows down about one and a half seconds after it starts to move; (2) the door acts differently depending on the traffic that is going through the door; (3) the door does not operate at the same speed for one complete revolution; and (4) people differ when operating a stopwatch based on what they perceive and the way they react. Crim Dep. at 23-24, 61, 67. Mr. Crim's calculations do not account for any of these variables and his method of calculation allows too many human factors to affect the outcome. Since the evidence proffered by Plaintiff's expert witness regarding the speed of the door at the time of the incident is speculative, at best, Defendant is entitled to summary judgment.

Even assuming, *arguendo*, that Plaintiff could establish the speed of the door at the time of the incident, Plaintiff cannot prove that it was the speed of the revolving door which caused her accident. See Hartwell v. Donial Med., Inc., 47 F. Supp.2d 703, 707 (W.D. Va. 1999) ("Under any theory of tortious injury, one requisite element of a claim is a causal connection between defendant's conduct and plaintiff's injury.") (citation and internal quotation marks omitted). Plaintiff herself has never stated that the door was moving too fast or that the speed of the door caused her injury.[2]

---

[2]In Plaintiff's deposition she stated as follows:
Q: Now, as you were in the door looking out at your cousin, did you have any observations about the speed of the door?
A: It was just– it was such a shock to me, you have no idea.
Q: It was a shock to you when you got hit?
A: Yeah.
Q: But before you got hit, you weren't walking thinking, boy, this door is going too fast?

Moreover, the witness of the event, Plaintiff's cousin Mary Cantor, does not remember the details of the incident.[3] Absent some proof of causation apart from allegations in the pleadings or a witness at the time of the incident to say that the door speed caused Plaintiff to fall, the Court cannot determine that it was the speed of the door that caused Plaintiff's accident. Accordingly, there is insufficient evidence of causation to raise a genuine issue of material fact for the jury.

Plaintiff cannot establish the speed of the door at the time of the incident, nor can she prove that the speed of the door is what caused her accident. Because a reasonable jury could not return a verdict in favor of Plaintiff, summary judgment is appropriate.

IV.

For the reasons outlined above, Defendant's Motion for Summary Judgment is GRANTED.


/s/ James R. Spencer
UNITED STATES DISTRICT JUDGE


MAY 4, 2005
DATE

---

A: No.
 *   *   *
Q: So other than the fact that the door hit you, you really don't know anything about what was wrong with the door, if anything?
A: I have no idea.
See Pl. Dep. at 74-75.

[3]When asked about the event Ms. Cantor stated "Well all I remember is seeing the door revolving. She was falling towards me because I was right there, and I reached out quickly to grab her hand." Cantor Dep. at 10.